## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| EDDIE WILSON, | ) |
| Plaintiff, | ) |
| v. | )      Civil Action No. 18-1493 (ABJ) |
| J. PATRICIA WILSON SMOOT *et al.*, | ) |
| Defendants. | ) |

## <u>MEMORANDUM OPINION</u>

Plaintiff, a prisoner appearing *pro se*, filed this action against the former Chairperson of the United States Parole Commission, two named Commissioners, and a named Examiner, all in their official capacities.[1] Compl. at 2. He claims that the Commission violated the Constitution's *ex post facto* and due process clauses by not determining his suitability for parole under the former D.C. Board of Parole's 1972 guidelines. Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the grounds of *res judicata* and failure to state a claim upon which relief may be granted. The Court does not find the doctrine of *res judicata* to be applicable, but it agrees that plaintiff's claim fails on the merits. So it will grant defendants' motion for the reasons explained more fully below.

---

[1] "An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Pursuant to Fed. R. Civ. P. 25(d), the Court substitutes Acting Commission Chair Patricia K. Cushwa as the proper defendant.

# BACKGROUND

## A. Parole Proceedings

"Plaintiff is serving aggregate sentences imposed for a crime spree in 1975 consisting of kidnaping, robbery, burglary, rape, and first-degree murder, in violation of various portions of the District of Columbia Code, as well as for a 1978 violation of the United States Code for possession of a controlled substance in prison." *Wilson v. Fulwood*, 772 F. Supp. 2d 246, 250 (D.D.C. 2011) (*Wilson I*). Plaintiff had parole hearings in 2001, 2004, 2005, and 2008, which were the subject of prior court actions. *See Wilson*, 772 F. Supp. 2d at 251-56 (providing comprehensive discussion of the District's parole regulatory framework and the history of plaintiff's first four parole hearings); *id.* at 262, citing *Wilson v. U.S. Parole Com'n*, 2010 WL 569554 (M.D. Pa. Feb. 11, 2010) ("the Middle District of Pennsylvania adjudicated on the merits a habeas petition" where plaintiff "only challenged his 2004 and 2005 proceedings").

In addition, plaintiff had parole hearings in October 2010, September 2012, February 2015, and February 2018. Each time, the Commission applied the D.C. Board's 1987 guidelines, departed from the score indicating that plaintiff should be paroled, and denied parole upon concluding that plaintiff was "a more serious risk than shown by [his] point score." Def's Exs. A-D, Notices of Action ("NOA") [Dkt. # 14-2].

## B. Origin of Claim

The U.S. Parole Commission assumed responsibility over D.C. prisoners in 1998 as a result of the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub.L. No. 105-33, 111 Stat. 712, 734-37 (codified at D.C. Code §§ 24-101-142). *See Fletcher v. Reilly*, 433 F.3d 867, 870 (D.C. Cir. 2006) (discussing "Changes to Parole and Reparole Regulations for D.C. Code Offenders"). In May 2010, D.C. Code offenders who committed crimes before March 3,

1985, filed suit challenging on due process and *ex post facto* grounds the Commission's retroactive application of its 2000 guidelines to their parole proceedings, "instead of . . . the guidelines that were in place at the time of their offenses." *Daniel v. Fulwood*, 766 F.3d 57, 58 (D.C. Cir. 2014). The district court granted the Commission's motion to dismiss, and the plaintiffs appealed. The D.C. Circuit held that the plaintiffs had plausibly claimed "that the 2000 Guidelines create a significant risk of prolonging their incarceration in comparison to the 1972 Guidelines" and remanded the case to the district court for factual development. *Id*. at 66. That decision "set in motion a series of events that ultimately ended with the Settlement Agreement" in which "the Commission through rulemaking agreed to apply the 1972 Guidelines to Plaintiffs." *Daniel v. Smoot*, 316 F. Supp. 3d 79, 84-85 (D.D.C. 2018).

In a letter to plaintiff dated November 9, 2015, the Washington Lawyers' Committee informed plaintiff that the Commission had identified him "as someone who may be eligible to receive a new parole hearing using the 1972 DC Board of Parole guidelines." Compl. Ex. A. The letter provided information about the *Daniel* case, listed the criteria for eligibility, and explained the procedures for obtaining a "special re-hearing[]" and requesting representation. *Id*. In a Notice of Action dated December 1, 2015, the Commission identified plaintiff as "eligible for a new determination;" voided the April 1, 2015 NOA that had scheduled plaintiff's "reconsideration hearing in February 2018;" and scheduled "a new rehearing . . . for the week of January 11, 2016," at which plaintiff's "case" would "be considered using the parole guidelines in the 1972 regulations of the former District of Columbia Board of Parole." Compl. Ex. B.

Plaintiff alleges that shortly after receiving the Commission's NOA, he completed the form application for parole. Compl. at 4. His case manager then informed him that she would "do a progress report," and the documents comprising the "parole package" were sent to the

Commission. Compl. at 4; Ex. C. But "a few days before" the scheduled hearing in January, plaintiff's case manager told him that he was not on the docket to see the Commission, but she had no explanation for the omission. Compl. at 4. Plaintiff alleges that the Commission failed to respond to the case manager's email inquiry and his written inquiries regarding the cancelled hearing. *Id.* An NOA dated November 2, 2016, shows that the Commission voided the December 1, 2015 action and reinstated the April 1, 2015 NOA, listing as "Reasons:" "[p]er 28 C.F.R. § 2.80(p)(7), the Commission will continue to apply the D.C. Board of Parole's 1987 guidelines to your case." Def.'s Ex. E at 2.

Following a hearing on February 1, 2018, the Commission denied parole to plaintiff and scheduled a rehearing for three years later, in January 2021. Compl. Ex. E, Feb. 15, 2018 NOA. Plaintiff "continue[d] to be scored under the [D.C. Board's] 1987 guidelines." *Id.* In a handwritten note on the foregoing exhibit, plaintiff stresses: "The pertinent part is the use of the 1987 guidelines in 2018." *Id.*

## C. Requested Relief

In the instant complaint filed on June 18, 2018, plaintiff seeks: (1) a declaratory judgment stating "that the defendants' acts, policies, practices and guidelines . . . violated" his constitutional rights; (2) "class action status under the *Daniel v. Fulwood* ruling, as an ex post facto member of that class" and a declaration that he is "a member of the settlement agreement"; and (3) "a new initial parole hearing from the defendants, using the 1972 guidelines in accordance with due process, and the settlement agreement, retroactively from the date of the December 1, 2015, notice of action." Compl. at 8.

## LEGAL STANDARD

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*., quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*., quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*., citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in the plaintiff's favor, and the Court should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Where the action is brought by a *pro se* plaintiff, a district court has an obligation "to consider his filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014), citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), because such complaints are held "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See Kowal*, 16 F.3d at 1276; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C.

Cir. 2002).  In ruling on a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997).

## ANALYSIS

### A.  Res Judicata

The *res judicata* doctrine is designed generally to conserve judicial resources and the finality of judgments; the appeal process is available to correct error.  *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981).  Consequently, "the parties to a suit and their privies are bound by a final judgment and may not relitigate any ground for relief which they already have had an opportunity to litigate even if they chose not to exploit that opportunity whether the initial judgment was erroneous or not."  *Id.*  "Whether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.'"  *Apotex, Inc. v. Food & Drug Admin.*, 393 F.3d 210, 217 (D.C. Cir. 2004), quoting *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002).  Courts consider "whether the facts are related in time, space, origin, or motivation[;] whether they form a convenient trial unit[;] and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."  *Stanton v. D.C. Court of Appeals*, 127 F.3d 72, 78 (D.C. Cir. 1997) (internal quotation marks and citation omitted).  It is axiomatic that parties are not barred "from bringing claims based on material facts that were not in existence when they brought the original suit."  *Apotex, Inc.*, 393 F.3d at 218.

Defendant argues that plaintiff's claim is procedurally barred because the court "has already adjudicated the claim [he] raises here," and he "has had two previous opportunities where" the claim could have been raised. Def.'s Mem. at 6, quoting various portions of *Wilson I*. The Court disagrees.

While "changes in case law almost never provide a justification for instituting a new action arising from the same dispute that already has been litigated to a final judgment, statutory changes that occur after the previous litigation has concluded may justify a new action." *Alvear-Velez v. Mukasey*, 540 F. 3d 672, 678 (7th Cir. 2008); *see id*. at 680 (applying res judicata with less rigidity where "the relevant change in the law . . . is statutory in nature, as opposed to a change in case law, and that change is being applied in the administrative context"). Such is the case here. Plaintiff's claim arose from a regulation promulgated and published by the Commission four years after *Wilson I* and five years after his habeas proceedings in the Middle District of Pennsylvania. *See* 28 C.F.R. § 2.80 (eff. Oct. 19, 2015). In addition, the official conduct giving rise to this action occurred on December 1, 2015, when plaintiff was informed (albeit wrongly) that he was "eligible for a new determination pursuant to 28 C.F.R. § 2.80(p)" and would be given a rehearing accordingly. Dec. 1, 2015 Not. of Action. In other words, the legal and factual predicate for plaintiff's claim did not exist at the time of *Wilson I* and the habeas proceeding. Therefore, the Court finds *res judicata* to be inapplicable.

### B. Failure to State a Claim

But that does not mean that plaintiff's claim is viable. He relies on the *Daniel* case, but that decision does not govern here. First, plaintiff seeks a declaration of class membership but as defendant has shown, *Daniel* did not certify a class. Def.'s Mem. at 11-12, citing Stip. of Settlement and Dismissal with Prej. in No. 10-cv-862 (D.D.C. Feb. 10, 2016) [Dkt. # 77]. Second,

the regulation resulting from the *Daniel* litigation clearly states that "[p]risoners [like plaintiff] who have previously been considered for parole under the 1987 guidelines of the former D.C. Board of Parole will continue to receive consideration under those guidelines." 28 C.F.R. § 2.80(p)(7); *see* Feb. 15, 2018 NOA (stating same). Third, plaintiff is "a dual D.C. and Federal offender" whose parole determinations are governed by 28 C.F.R. § 2.65, and that regulation "controls and dictates" that the Commission apply, as it did here, "the 1987 guideline[s] to Plaintiff's parole hearings." Def.'s Mem. at 12-14; *see Ford v. Massarone*, 902 F.3d 309, 312 (D.C. Cir. 2018) (citing § 2.65 as "the federal regulation that governs . . . D.C. parole hearings for offenders serving both D.C. and federal sentences"); 28 C.F.R. § 2.65(e) ("At the D.C. parole hearing the Commission shall apply the point score system of the D.C. Board of Parole, pursuant to the regulations of the D.C. Board of Parole, to determine the prisoner's suitability for release on parole.").

In sum, plaintiff's claim fails because he has established neither a constitutional nor a statutory right to a parole hearing under the 1972 guidelines. Therefore, this case will be dismissed.


## CONCLUSION

For the foregoing reasons, the Court grants defendant's motion to dismiss. A separate Order accompanies this Memorandum Opinion.

AMY BERMAN JACKSON
United States District Judge

DATE: September 13, 2019

8